Life Insurance Company. I'd like to start off today by acknowledging that RSL could have done a better job on the claims handling and the underlying matter, but the reason we're appealing today is because poor claims handling has nothing to do with RSL being named as a defendant improperly in a 502A1B action. Okay. Here's my basic problem with this case, and it's – and in a way it doesn't even get to the proper or improper handling of the claim, and I'm not even addressing whether it was proper or improper. It seems that our case law on who may be sued is a total mess, and it's evidenced, among other things, by the district judge here who went one way and then went the other way, and he might have gone the other way in direct opposition to some of our precedents, but maybe following a Supreme Court case, maybe not. Why shouldn't we go en banc actually to clear this up so that everybody, including your client, has a way of figuring out what the law is as to who may be sued? That is an interesting issue. I would argue that there is not a confusion. I think that Ninth Circuit case law is very clear that the only proper defendant is either the plan or the plan administrator, and there has been some confusion. And is it clear that if that is the Ninth Circuit case law, is it clear that we're right? If that is the Ninth Circuit case law and it's clear, this panel has to follow it. Exactly. But if we're persuaded that that's wrong, our – what we must then do is go en banc to correct it. This panel, of course, cannot correct it on its own. And I understand that. And I do think that's the right decision. I think if you look at the statute, 502A1B specifically references obtaining plan benefits, getting a declaration regarding plan benefits. And then you go ahead and look at 502D, and that specifically references that the plan can be sued as a legal entity and that any money judgment against the plan can only be enforced against the plan. And I think if you read the statute as a whole, the intent is to have the plan and perhaps the plan administrator be liable for money judgments. And I think that also makes sense because the plan administrator is a term of art within ERISA. The plan administrator is not necessarily the same thing as a claims fiduciary. The plan administrator is responsible for the entire plan. If you look at the summary plan description that was prepared by CTI, you'll notice that they reference things like disability insurance, medical insurance, pregnancy leave. The plan administrator is responsible for putting all of the plan benefits together, for disclosing all of the plan benefits, for preparing a summary plan description. And the plan administrator is also the entity that is going to suffer penalties as a result of not doing that. And I think there's a case, Moran, which makes a distinction between the plan administrator and its obligations and a claims fiduciary, such as an insurance company. The other thing that's important to make a distinction on is that the plan administrator and the plan is not necessarily the same thing as the insurance company and the insurance policy. It's the plan administrator that is warranting these benefits to the employees. It's the plan that's providing these benefits. The insurance policy is only basically providing benefits that the insurance company promised to the employer. Well, okay. If your client can't be sued, which is, of course, your argument, what remedy does this plaintiff have? Well, I think the remedy, well, I think that's not necessarily the argument. I think that they have a 502A3 claim that the Court never got to in the underlying action. With respect to 502A1B, they could sue the employer, CTI Corporation, but they can't do that because of their own volition. They entered into a collusive release with the employer. Well, that's your characterization. I can see why you're saying that. It may or may not be. But they're suing the employer for what? They're suing the employer for plan benefits. I'm sorry, not the employer, the plan administrator, CTI, who happens to also be the employer. They can sue that employer for plan benefits. And where is that money coming from? That money would come from the employer. And if the employer basically believes that it's money the insurance company should have provided, there can be an action against the insurance company. So you'll eventually be sued as a third-party defendant? Not by, I don't think, not by Sear, but perhaps by the employer. But I don't think the employer. Well, that's what I asked. As a third-party defendant, Sear sues the employer, the employer sues you? That's a possibility, I would think, Your Honor, yes. A possibility? I mean, are you now conceding that that cause of action lies? I have not really reviewed that. That was discussed in the underlying action. I'm not conceding at this moment that that cause of action lies. I do know that we have a contract with the plan administrator, which is CTI. I don't think that the plan administrator plans on suing us because the plan administrator has been completely released by the settlement agreement. So I don't think that's really a possibility. But I do, and I don't think there's really a confusion getting, and I know we have, this is a pretty confusing case, actually, because we also have the issue of plan interpretation, and then we have the issue of whether procedural problems can result in a substantive remedy. But I just want to address one last thing with respect to Ninth Circuit case law. I think that the reason that some people have claimed that there is some confusion with respect to who's the proper party is, with all due respect, some of the Ninth Circuit cases kind of use the term plan administrator claims fiduciary loosely. I do think the two cases that have directly addressed the issue, Everhart and Ford, were directly on point, that only the plan and perhaps the plan administrator are proper defendants. So that's what I'd like to say in that regard. Well, but Everhart's the one that opens the door to the notion of the insurer acting like a plan administrator. The argument is used here. That's the argument. That's not how I read Everhart in any way, shape, or form. That was the dissent's argument in Everhart. Well, that's the majority opinion. It may have been an unfortunate reference to something that wasn't an issue there, but the majority says, does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator, which opens the door to the argument. Well, then, if you are functioning as the plan administrator, the door is open to lawsuits. And I think that's the source of the confusion. Ford pushes the door shut again. Exactly. Yes. And I would agree with that. I mean, that's what the district court found. I think that if you also read Everhart and other parts of the opinion, they're very clear that just because you have discretion over providing benefits and just because you're the insurance company that has discretion over providing benefits under the plan doesn't mean that you can be sued under 502A. I would agree with you that that language could have been perhaps phrased better generally, but Ford does close that door. I already use that as a jumping-off point, because I think it focuses attention on the possibility that you just noted. Is it the exercise of discretion that we should be looking at? Because that becomes the target of the problem. Who's the decision-maker and what is that party's motivation? You know, in so many of these cases, the issue becomes standard of review, the conflict of interest, and so forth. In this case, although the administrator is not the insurance company, in practical terms, we've used the Everhart language, the insurer is acting like the administrator or exercising the discretion that ordinarily you see in the hands of the administrator. Should that be an exception that's recognized? I'm sorry. I would argue no, it shouldn't be. Why not? Because there is a difference, as I was mentioning earlier, between a claims administrator and a claims fiduciary and the plan administrator. The plan administrator has different obligations. And the important thing to realize is that it's the employer, through the plan, that is promising these benefits to the employer, to the employee, not the insurance company. Once again, the insurance company, if they issue a contract, is simply promising to pay or fund certain benefits. If there is a mistake in a summary plan description prepared by the employer, let's say the summary plan description says, we are going to insure your benefits, your disability benefits at 70% of your salary. And they get an insurance policy from the insurance company that only insures the benefits at 67% of the salary. The plan benefits that are owed are the 70%. That's what's promised by the employer. That's what the plan document promises. The other thing is an insurance policy is often only one part of a plan. You can have a master plan document, which some of the larger corporations have. You have the summary plan description, which is the only written document required under ERISA. You have administrative services agreements. You have also insurance policies, which might help fund part of the plan. So I think there's really, there's legal reasons and I think there's practical reasons not to allow anybody but the plan or the plan administrator to be sued under 502A1B. I'm not sure that really answers the concern I have, which is the exercise of discretion. In this case, it appears pretty undisputed that the discretion that ordinarily starts with the plan administrator was exercised by the same entity that was the insurer. Well, I understand that there's an argument that says the plan administrator should be the target if there's a variance between the plan and the insurance policies that occur for the plan. But it seems to me that's a very different problem and cause of action. Here the question becomes, look, if the discretion that the plan administrator customarily has is handed over to the insurer, why shouldn't the insurer be as susceptible to a lawsuit as the plan administrator is? And I think the dissent raised that, admittedly, in Eberhardt. They're saying, why don't we adopt third-party beneficiary law like they have in California? And before ERISA took place, if there was a group policy issue to the employer, the insurer could come, the employee could claim they're a third-party beneficiary. The response was, and I think it's correct, is we're not dealing with common law here. We're dealing with a carefully crafted statutory scheme. And where does a carefully crafted statutory scheme help us with respect to this particular issue? Well, I think the carefully crafted statutory scheme helps us in that it references under a 502A1B claim that only plan benefits, i.e., plan benefits, can be recovered. It also, under a 502D claim, specifically delineates the plan as a legal entity and indicates that the plan can be sued for a money judgment and a money judgment against the plan can only be collected against the plan. I think Congress wouldn't have put that wording into this statute unless they had an intent to make the plan responsible under 502A1B. And then they also provide a mechanism for suing these insurance companies under 502A3, which the Supreme Court has said is a catch-all provision. And I would do this. There's a couple other bigger, not bigger issues, but important issues that I kind of want to jump to unless you have any other questions on this. Go ahead. And this now would be on the assumption that you are, that your client is suable. That's probably where you're headed now. I'm sorry, what? Okay. The points you now want to make are on the assumption with the dispute, on the assumption that your client is suable. Exactly. Yeah, okay. Yes, yes, exactly. There was two other issues that I wanted to get to. I mean, I think what happened in this case is my client was upset by what they felt was the manipulation of information provided to them, and the district court was upset by what it felt was poor claims handling. But that being, that being the case, poor claims handling doesn't mandate that RSLs should have to pay benefits that aren't provided for in the policy. Poor claims handling doesn't mean that RSLs shouldn't have the right to contest the ultimate issue in the case, which is whether or not the wage adjustment was bona fide. I can address the first issue, which is the policy is abundantly clear. There is a covered monthly earnings provision, which specifically states that your disability benefits are going to be based on your covered monthly earnings. Covered monthly earnings are defined as your salary, your monthly salary on the date before you just go out on disability. Laura Sears' salary at that time, translated to a yearly salary, was $85,000. That year, is it Mr. Walsh, I believe? Yeah. The officer in charge of that operation conceded that there had been retroactive adjustments and didn't see a problem with the retroactive adjustment here, leaving aside the collusive information part, which we're going to get to. I'm not sure how powerful the argument is that you can't make a retroactive adjustment when, in fact, the company did. I think he indicated that there were two retroactive wage adjustments based on court orders, which I would argue is a little bit of a different bird than a settlement agreement. Well, we may have a court order here, too, but of a different sort. But I think the other point is I don't think Richard Walsh has the authority to abrogate clear and concise plan terms. It makes the plan terms somewhat less clear and concise. It turns out the person's job is to administer it. It doesn't read it the way you're now arguing. It didn't report to apply it in the way you're now arguing. And that's what the district court argued, basically. I would argue that these plan terms are so clear there can't be another reasonable interpretation. I mean, the fact that the district court had to go out across the country and find a workers' compensation statute involving a collective bargaining agreement to argue that the term received is ambiguous is, I think, evidence that he was really trying to find a way to read into ambiguity, find an ambiguity where no ambiguity existed. And I'd also note that we also have an actively at work provision, which is abundantly clear. The district court declined to follow the Olson case from the Supreme Court of Utah, which says this actively at work provision is specifically inserted into the policy to prevent collusion between the employer and employee. The district court said I'm not going to follow that because it's a non-ERISA case and I don't have to follow it. But at the same time, when he wanted to find an ambiguity in the covered monthly earnings provision, he reached across the country and found a Massachusetts workers' compensation case. So I would argue that the plan language is abundantly clear in the present case. Let me ask you this, and it may be too deeply into the actuarial calculations for you to answer it. I'm trying to figure out how the premiums are calculated for potential payoffs under this part of the policy. It occurs to me that the premiums are calculated based on how much is actually being paid rather than on how much might be paid retroactively in the event the company is held to have been violating, for example, Title VII. Can you give me any information on the actuarial foundations for the premiums? You know, I had thought about making that argument underneath. We never got to that issue, and so I'm really not sure. Okay. Fair enough. And then the final, and I want to reserve a couple minutes of time, the final issue I want to point out is what the district court did was basically argue that you procedurally did such a terrible job procedurally on this case that I'm not going to get to the ultimate issue in this case was whether the wage adjustment was bona fide. I would argue that there is no Ninth Circuit case that has ever reached that conclusion. Even in Blau, where the court castigated the employer for not revealing a secret severance program, the court went ahead and remanded it back to the district court to determine whether or not the employees were entitled to that severance program. That being said, I'd like to, unless you have questions, reserve about three-and-a-half minutes for. Those minutes are yours. Thank you. Good morning, Your Honors. May it please the Court and the Justice Department. Co-counsel Joseph Garfolo on behalf of the FLE plaintiff floor is here. With the Court's permission, we would like to divide the argument today. I would like to handle the question, the proper party question, that the Court was requiring of Mr. Bernanke, and also the issue of whether the Court abused its discretion in excluding evidence pursuant to Federal Rule of Evidence 408. Mr. Garfolo would like to handle the remaining issues in the case, and with the Court's leave, we would divide the time equally. May I inquire, before you proceed with the argument, looking at the amicus brief of the Department of Labor, its captioned brief of the Secretary of Labor as amicus curiae, supporting Appellee's petition for hearing en banc, is there a formal motion by the Appellee for en banc hearing? Yes, Your Honor. We filed a petition for en banc at the time that we filed Appellee's brief in this case. And my first course of argument here was to respond to the initial question, I believe, of Judge Clifton, why shouldn't the Court merely refer this issue to an en banc panel immediately? I just didn't see that in the caption of your own brief. It's not in our brief. We filed a separate brief in support of the – a separate petition in support of the en banc. Obviously, we've asked the Court to hear this en banc already, and we have no objection if the Court wants to refer it to en banc. I don't think it's necessary to hear this case en banc. RSL, unfortunately, has argued an interpretation of Ford and Eberhardt that is squarely at odds with the Supreme Court's pronouncements in Metlife v. Glenn last year. The Supreme Court having spoken implicitly on the question raised here, we think there's really no issue left to resolve. In Metlife v. Glenn, Metlife was situated identically to RSL. It was a claims administrator, and it was the funding insurer for benefits under the plan. But it was not the plan administrator. We know this because it says so explicitly in the district court decision in that case, which can be found in 2005. I take it this isn't in your brief. Have you given us a 28-J letter advancing this argument? We have, Your Honor, although this argument is explicitly in the Department of Labor's amicus brief that Judge Pollack was referencing a moment ago. Discussing Metlife's liability in the – in the Metlife v. Glenn case, the Supreme Court noted the fact that Metlife was liable under A1B to pay benefits and took that as evidence that ERISA imposes higher than marketplace quality standards upon insurers. Likewise, in his concurrence, Chief Justice Roberts wrote, and I quote, I agree that a third-party insurer's dual role as a claims administrator and a plan funder gives rise to a conflict of interest that is pertinent in reviewing claims decisions. So it's clear that the Supreme Court understood the nature of the entity that was before it and absolutely took it for granted that a funding claims administrator is a proper party defendant to a claim for benefits under ERISA 502A1B. The district court likewise correctly distinguished Ford and Eberhardt, and I can talk about each of those cases in turn. Ford involved a claims administrator that was not the funding insurer. The funding – the funding party for benefits in the Ford case was the employer, MCI. And therefore, to the extent that Ford purported to speak on whether a funding administrator was a proper party, it was speaking in dicta, as the – as the court below observed in this case. Similarly, Eberhardt carefully read, stands most – most properly for the proposition that if a beneficiary settles her claims against the plan and the plan administrator and releases them fully, there is no more ERISA claim, and she can no longer sue the plans insurer for, as that – as that case notes, additional, in quotes, plan benefits. Here, Mrs. Sear preserved all of her claims against the plan, against the plan administrator, and obviously against RSL. And frankly, in the court below, RSL never argued that the claims had been released, and it hasn't argued that on appeal either. So while en banc is perhaps an appropriate way to resolve this question, in light of MetLife v. Glenn, it's probably not necessary. Let me say that I haven't thought through MetLife. Possibility is referenced in the amicus brief. It's not referenced in a way that makes a pretty powerful argument, but that may be my problem, not the government's. But I'm still concerned about the possibility of en banc treatment, and if – jumping past the – the MetLife group for a moment, if we conclude that Ford, as it says, the only alternative for us to reach a different result is to have the case called for rehearing en banc, we have to face the question of is it justified? Just because we disagree with the prior panel decision doesn't mean we flip it to en banc. And that brings me to the question of why aren't alternative remedies, including the remedies pled in this case, sufficient to solve the problem? Why do we have to use this particular route to a result? Two reasons, Your Honor. First of all, counsel for RSL has said, well, we have a viable 502A3 claim against RSL. However, A3 restricts the remedies available to equitable remedies. And it's not clear under the Supreme Court's guidance in Great West whether an equitable remedy would or would not include an order to pay benefits. It's not at all clear whether that would be damages that's not allowed under A3 or whether that would be an equitable remedy that is. Additionally – You're saying it would not be an equitable remedy? It's not clear whether it would or it would not. It is entirely possible that the district court could rule and this court could subsequently affirm that an order to pay benefits is not a, quote, unquote, equitable remedy under the Supreme Court's guidance in Great West. Counsel for RSL likewise has argued that she could simply sue the plan for monetary benefits. But his own client, Mr. Walsh, in deposition testified quite clearly that RSL is the only entity with any obligation to pay any benefits in this case. Well, that's hardly an authoritative statement of law, is it? It's not an authoritative statement of law, Your Honor, but it certainly seems to be an admission of appropriate party status at a minimum. Well, that doesn't answer the question. Could the plan administrator be sued? Could the plan be sued? The answer appears to be yes. But they were sued. They are named defendants in this lawsuit. You say the plans haven't been released? They have not been released, but they are named purely so that relief can be granted. We do not believe that it would be appropriate to enter an order for monetary relief against either entity. Why not? Because neither of them has any obligation to fund the plan. At the time that this plan was being administered with respect to our client, Mrs. Sear, there was not even any plan document other than the insurance policy itself. The insurance policy administered fully by the insurer was the plan. From your client's perspective, what's wrong with obtaining relief against the employer, against the plan? If she does it that way, then, as Your Honor alluded to during the prior argument, the plan would have to file a second lawsuit against RSL to recoup the benefits to pay to her. It contributes to the policy of multiplication of proceedings and judicial efficiency. Is that a problem for your client? Only in terms of the fact that she's already been waiting about five years to get her benefit, and she would probably have to wait at least another two or three if that's the route that she were forced to go. I'm not sure why that's the case. It's the same lawsuit. You said they named the plan and the plan administrator in the lawsuit. I mean, going to the en banc brief is not a real shortcut either. It's not, Your Honor. And as I pointed out, I think en banc is probably not necessary under the Supreme Court's holding in MetLife v. Glenn. I think it pretty squarely resolves the issue at this point. Well, I confess I have not yet read MetLife. I read the brief of the Labor Department, and the Labor Department, obviously, having read it and incorporating it in his brief, calls for en banc. Okay. And for us to overrule earlier panel precedent based upon later Supreme Court case law, that later Supreme Court case law better be very clear. Again, it's not ultimately necessary to overrule either of those decisions. We believe that they can be harmonized with the existing law merely by holding that they require that in order to sue a funding insurer, you also have to sue either the plan or the plan administrator. I'm not going to insist that it be denied, but there's no reason for this case to be divided between two attorneys. I apologize that we elected to do it that way, Your Honor. So let me simply conclude. We'll do it the next time. Okay, Your Honor. Point taken. I would like to conclude by pointing out, simply with respect to the argument   It's not necessary to overrule either of those decisions.  that was raised that the judge erred in excluding evidence pursuant to Federal Rule of Evidence 408. The law is quite clear that the judge's evidentiary determinations are made discretionarily and must be reviewed for abuse of discretion. RSL has not argued anywhere in its reply brief or in its initial brief that the judge abused his discretion. And under this Court's holding in the United States v. the failure to argue an abuse of discretion when that is the standard that is applied waives the argument. So at this point, we believe there is no argument effectively appealing the judge's decisions under 408. And I will cede the rest of my time to my co-counsel. Thank you. Good morning, Your Honors. My name is Joe Garfullo, and I'm also counsel for Appellee Laura Sear. I want to first express my apologies also for dividing argument. It will not occur in the future. One point that I wanted to also address on the Ford-Eberhardt issue is that RSL has routinely Wait a minute. You've divided argument. You've divided the issues. But you want to go back to the first issue. Do I understand this correctly? Yes, you do. I think that the point is so significant that I'd just like to briefly Now that we have that clear, why don't you go back to the issue? What I'm really looking to say is that the defendant appellant in this case has selectively appeared jurisdictionally in suits like this. And subject matter jurisdiction in this instance is not something that can be waived. So you'll see many Ninth Circuit cases where RSL has appeared as a party in a 502A1B suit when it is not the plan administrator. So I think that's an important point to bring back on the Ford-Eberhardt issue. That the appellant can't selectively come in and out of lawsuits based on jurisdiction argument. And that is exactly what RSL does. I've got three additional Does the Justice Department want to talk about that issue? Again, Your Honor, I apologize for dividing argument. I'd like to cover three additional points that respond to the appellant's arguments. The first is that contrary to RSL's contentions, the district court made a factual finding that RSL's evidence does not support the invalidity of the wage adjustment agreement. RSL brings a lot of tangential evidence that does not go to the relevant issue, which is whether or not Do you want a summary judgment? Correct. How did the district court make a factual finding? The district court, what the district court did is it states on page 21 of its order at ER191 that, let me, I'll read it. It says, however, none of the proffered evidence in any way challenges the merits of Sears' wage discrimination claim, nor does it challenge the fact that the appropriate corresponding male salary was $155,000. Now, RSL doesn't challenge that fact, that finding, on appeal. It simply ignores the fact that that conclusion was reached by the district court judge and therefore has waived the argument that the only evidence that was submitted in this case actually supports the wage adjustment agreement. Only the parties that reached the settlement didn't, in fact, act that way, because your client was given that salary for, what, one week or ten days, I forget. They often paid $155,000 or are rated $155,000 for any material period of time by the employer. And that is RSL's argument. But the flaw in that argument of RSL is that the time period for which the wage needed to be adjusted was specifically approved by the insurer in advance. So that line of inquiry occurred during the administrative process. What does that mean in English? What does that mean? What that means is Mrs. Sears, underlying wage discrimination attorney, spoke to Mr. Walsh, the representative of RSL, and asked how much in advance do you need prior to the date of disability. And that doesn't support the bona fide nature of the settlement one with. CTI didn't pay $155,000 to her for any material period of time. So I have difficulty understanding how the district court can take as accepted fact that's the appropriate wage that should have been paid. Because she wasn't paid that by the employer. Your Honor, there's no breakdown in the settlement as to what part constitutes what part. We know that. Is it true, as has been alleged, that after the insurance company declined to pay, that they went back and redid the settlement or that the initial settlement was conditioned on the insurance company? The initial settlement, the wage portion of the initial settlement was conditioned, but that was to ensure that there was certainty by the parties as to what they're getting. And I think the first settlement in place, if it was conditioned on RSL paying and RSL didn't pay, did the first settlement actually come into effect? There was additional negotiation and then the settlement with substantially similar terms did go into effect. But I think that, again, we're going towards a tangential view when the only evidence whether or not there was, first of all, I think I want to bring this back to the plan terms. The plan terms don't require. I understand why you want to bring it back to the plan terms. But you can't escape the assent which emanates from this deal. This deal appears to be your client and your client's employer trying to figure out a way to make the insurance company pay for the claim. Your Honor, I don't agree with that. And the reason I don't agree with that is that this case would have been tried. And in order to for there was a mandatory. If it had been tried and you had won, would the employer have been able to pay that $155,000 for one week or would it have been required to pay for an entire period of time? I think the principles of settlement and resolution come into effect. We don't know what period that the court would have. I don't agree with that characterization at all. In fact, what happened was the parties, after three years of hotly contested litigation, that litigation initiated in 2001, here we are in 2005, inviting the insurer to attend mediations and then the for the sake of the court, the state court, the counsel for the for Mrs. Sear in the underlying wage suit approaches the insurer and tries to get certainty here with respect to what would occur. So I don't agree with the characterization at all. If there were if there was an element of collusion here, which I don't believe there's there is no element of collusion here, then this would have been this would have happened very quickly.    I don't know if you're worried about the fact that she's going to go back three  I don't think you're worried about the fact that she's going to go back three years. There's no guarantee for Mrs. Sear that she's going to go back three years. Maybe she would have gotten five days during, you know, if the case had been tried. However, the issue here, though. I don't know if it would have happened to make her worth so much more money a week before her termination. Well, I, you know, again, I don't know. She might have gotten more time if the case had been tried. But the issue here is whether or not, does the plan require a month, six months? It requires one day prior to the disability. And when the insurer has specifically approved the date, in fact, there is some indication, too, that the insurer suggested that the date only needs to be before, that I think that's the relevant point here. What the participants and beneficiaries of ERISA plans are looking for is certainty. And that's precisely what Mrs. Sear has been deprived of here. When a participant approaches an insurer, an insurer interprets its own plan, not only in writing to the participant, but also there's substantial evidence that RSL has made numerous other adjustments. Under the law, in effect, at the time of the settlement, where Mrs. Sear gets the money from her employer for only a very short period, what was the understanding of the statute of limitations as to how far back she could claim against the employer for wage discrimination? She asserted the longest claim that she – it was the understanding it could go back to 1998. And that was the longest possible period, which she asserted. So, again, there's uncertainty in the settlement. And was the defendant talking about, well, wait a minute, sort of anticipating the brouhaha that, of course, we say on the floor of the Democratic Convention and good years. I mean, what degree of uncertainty was there at the time of the settlement as to how far she could go back under the statute of limitations? Well, I think that the parties didn't dispute that she could go back under the statute of limitations three years. Three years from the date of the cause, which would have been the wage discrimination nation lawsuit was filed in 2001. So how much further back could they have gone than they did go back, then, in terms of the actual settlement? Under – if she approved her claims, they could have gone possibly, I believe, another two years. I see. Okay. However, again, I think the important point here is that she's got wage information. Mrs. Sear has wage information from executives during a certain time period. So it's not just a matter of how much claims were asserted. It was a matter of what she could prove. And that's the – I believe that was the admission, in essence, that the employer was willing to make. So, you know, I think as everyone who's practiced law understands it, the settlement process is a fluid process. And because claims are not settled to their maximum. Let me understand this, then. And if she is to succeed in her claim under the plan or against the insurance company, this is in the record, and I should know this, but I do not. So she gets the full amount of the retroactive money from her employer for a very short period, a week or so. And then she gets what percentage of that from the insurance company over what period? Sixty-six and two-thirds, I believe, until she turns 72. And her age at the time of the – I believe she's in her mid-40s. So she gets two-thirds of $155,000. Only as long as she – exactly. Only as long as she stays disabled, though, which RSL has multiple times will inquire as to whether or not she's disabled. So there's no guarantee that she will continue to get that amount. Unless the Court has further questions, I'll sum up. None from me? Yeah, if you'd just give us your last words. I think the important thing to focus on is that this report was correct, that there is no direct evidence or even indirect evidence that Mrs. Sear was not entitled to the amount of benefits in the wage adjustment. In fact, the only evidence is on the record, and it was provided during the administrative process to the insurer, and the insurer never questioned that evidence. So therefore, for the reasons stated today and in Mrs. Sear's brief, the judgment of the district court should be affirmed, and Mrs. Sear should also be granted attorney's fees on the appeal. Thank you very much, Your Honor. Thank you. Mr. Bernanke. Thank you, Your Honor. I just want to address a couple of points. The MetLife case is not nearly as clear as the appellees make it out to be. I didn't read MetLife in that regard at all. I think what's been happening to a certain degree is that the courts are not really addressing the issue of the plan administrator versus the plan fiduciary versus the claim administrator and who's a proper defendant. Those courts that have addressed the issue specifically, Ford and MetLife, Ford and Everhart, have indicated once again that it's limited to the plan or perhaps the plan administrator. I'd like to briefly address the 408 issue. Judge Pragerson excluded a lot of the evidence on the – a lot of the evidence based on the fact that they were confidential settlement agreements. For my own edification, I don't understand that. This settlement was put directly at issue. It was the basis for which they were requesting that a higher rate be paid in disability benefits. I think that information needs to come in. And then the final issue is the bona fide nature of the settlement. You know, it just wasn't the week before her going out on disability that they raised the wages. There's evidence in there that they had an agreement, a side agreement that was never told to RSL that it was only good for purposes of getting disability benefits against RSL. It didn't apply to any of her other fringe benefits. There was an agreement they had that if for some reason RSL turned it down, that wage adjustment could not be used to actually show that was the wage that Laura Sear deserved. And there was an agreement not to provide us with a copy of the underlying complaint, which would have allowed us to put the lawsuit in context and how long she was claiming retroactive wages for. That being said, unless you have any other questions, I'll submit. I think not. Thank you very much for your arguments in this case. Thank you. Sear v. Reliance Standard Life Insurance is now submitted for decision. We've got one last case on the argument calendar, and we're doing that with one, I think, one lawyer actually in front of us and one lawyer by video. Okay. So we'll wait for you to set it up. Now, should we take recess? Is this going to take a minute? Okay. Okay. Okay. Good morning. Good morning. Can you hear us okay here? Yeah, I can hear you fine. Thank you. Okay. So the attorney will be here shortly. Is he in the courtroom now? Yes, he is. Okay. Fine. Good. Let's now call the case of Ratusa. I'm not sure I'm pronouncing it correctly. This is Holder.
judges: Pollak, Fletcher W. , Clifton